UNITED STATES BANKRUPTCY COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| IN RE: ) | Chapter 13 | |
| ALYSSA S. PETERSON, ) | Case No. 10-23429 | |
|    Debtor ) | | |
| ) | | $176.00 |
| _____ ) | | |
| ) | | # 275686 |
| ANN BEAULIEU AND JOHN ) | Doc. I.D. No. _____ | |
| BEAULIEU, ) | | |
|    Movants, ) | | |
| v. ) | | |
| ) | | |
| ALYSSA S. PETERSON, ) | DECEMBER 21, 2012 | |
|    Debtor, ) | | |
| MOLLY T. WHITON, ) | | |
|    Trustee. ) | | |
| _____ ) | | |

**MOTION FOR CONFIRMATION OF EXEMPTION FROM AUTOMATIC STAY,
OR, IN THE ALTERNATIVE, FOR RELIEF FROM AUTOMATIC STAY**

The undersigned Movants, ANN BEAULIEU and JOHN BEAULIEU, respectfully move this Court for an Order confirming that an automatic stay under 11 U.S.C. § 362(a) does not apply to the civil action captioned <u>Commission on Human Rights and Opportunities ex rel. Ann and John Beaulieu v. Alyssa Peterson</u>, Case No. LLI-CV10-6002882-S (Superior Court, Judicial District of Litchfield, at Litchfield) (the "Connecticut Action"). The Connecticut Action is "an action or proceeding by a governmental unit . . . to enforce such governmental unit's or organization's police and regulatory power," and is therefore exempt from the automatic stay. 11 U.S.C. § 362(b)(4). In the alternative, if the Court finds that the Connecticut Action is subject to the automatic stay, Movants respectfully move for relief from the stay under 11 U.S.C. § 362(d)(1). As grounds for their Motion, Movants respectfully represent the following to the Court:

## BACKGROUND

1.  The Commission on Human Rights and Opportunities ("Commission") is an agency of the State of Connecticut, established and appointed by the Connecticut legislature pursuant to Conn. Gen. Stat. § 46a-52. By statute, the Commission is charged with enforcing human rights laws that ban illegal discrimination in housing, employment, public accommodations and credit transactions. See Conn. Gen. Stat. § 46a-56(a)(3) ("The commission shall . . . [i]nvestigate and proceed in all cases of discriminatory practices as provided in this chapter . . . .").

2.  On August 3, 2010, pursuant to its statutory mandate to enforce the State's anti-discrimination laws, the Commission filed the Connecticut Action against the Debtor, Ms. Peterson, alleging in its Complaint that Ms. Peterson unlawfully discriminated against two former tenants based on the tenants' receipt of federal housing assistance. (See Exhibit A attached hereto.) Subsequently, Movants Ann and John Beaulieu (Ms. Peterson's former tenants) intervened as plaintiffs. In the Connecticut Action, the Commission seeks the following remedies as a result of Ms. Peterson's discriminatory acts: a civil penalty payable to the State of Connecticut, pursuant to Conn. Gen. Stat. § 46a-89(b)(2); costs, attorney's fees and interest payable to the State of Connecticut; compensatory and punitive damages payable to Movants; and costs, attorney's fees and interest payable to Movants.

3.  The Commission filed the Connecticut Action before Ms. Peterson instituted this bankruptcy proceeding. Neither the Commission nor the Movants ever received an official notice of the proceeding, and Ms. Peterson has actively participated in the Connecticut Action since its inception by, among other things, filing and responding to various motions and appearing at court hearings. Movants recently learned of the existence of this bankruptcy proceeding after Ms. Peterson mentioned being involved in a Chapter 13 bankruptcy. Upon

learning of this proceeding, Movants analyzed whether the automatic stay in 11 U.S.C. § 362(a) applied to the Connecticut Action, and then contacted Ms. Peterson's counsel and the United States Trustee before filing this motion.

4. The Connecticut Action is not, and never has been, subject to the automatic stay, because it is "an action or proceeding by a governmental unit . . . to enforce such governmental unit's or organization's police and regulatory power." 11 U.S.C. § 362(b)(4). The Commission, a "governmental unit," filed the Connecticut Action to enforce the Commission's power over violations of the State's anti-discrimination laws – precisely the type of case that Section 362(b)(4) is meant to cover. Nonetheless, Movants bring this Motion out of an abundance of caution, to obtain official confirmation from this Court that they may proceed with the Connecticut Action up to the point of obtaining a judgment against Ms. Peterson. In the alternative, should the Court hold that the stay applies, Movants request that the stay be lifted for cause under 11 U.S.C. § 362(d)(1).

## ARGUMENT

I. THE CONNECTICUT ACTION IS EXEMPT FROM THE AUTOMATIC STAY PURSUANT TO 11 U.S.C. § 362(B)(4)

5. In order to come within Section 362(b)(4)'s exemption from the automatic stay, the Connecticut Action must "(1) involve a governmental unit and (2) the unit must be exercising its regulatory or police powers." Martin v. Safety Elec. Construction, Co., 151 B.R. 637, 638 (D. Conn. 1993). The Connecticut Action satisfies both of these elements and is therefore not subject to the automatic stay.

A. The Connecticut Action "Involves A Governmental Unit"

6. First, the Connecticut Action clearly "involve[s] a governmental unit." Id. at 638. The Bankruptcy Code defines "governmental unit" as "United States; State; Commonwealth;

3

District; Territory; municipality; foreign state; *department, agency, or instrumentality of* the United States (but not a United States trustee while serving as a trustee in a case under this title), *a State*, a Commonwealth, a District, a Territory, a municipality, or a foreign state; or other foreign or domestic government." 11 U.S.C. § 101(27) (emphasis added). The Commission is a "department, agency, or instrumentality" of the State of Connecticut, established and appointed by the State to enforce the State's anti-discrimination laws. Conn. Gen. Stat. § 46a-52.

B.   The Commission Is "Exercising Its Regulatory or Police Powers"

7.   Second, in the Connecticut Action, the Commission is "exercising its regulatory or police powers" as required by Section 362(b)(4). Martin, 151 B.R. at 638. In order to determine whether a "governmental unit" is exercising its regulatory or police powers, courts consider two related tests, the "pecuniary purpose" and "public policy" tests. Solis v. SCA Restaurant Corp., 463 B.R. 248, 251-52 (E.D.N.Y. 2011). Under the pecuniary purpose test, "a court looks to whether a governmental proceeding relates to public safety and welfare, which favors application of the stay exception, or to the government's interest in the debtor's property, which does not." Id. at 252. Under this test, courts also examine whether "the specific acts that the government wishes to carry out would create a pecuniary advantage for the government vis-à-vis other creditors." Id. Under the alternative, public policy test, courts examine whether the government's action merely adjudicates private rights or whether it effectuates public policy. Id. Where a civil action "furthers both public and private interests," it should be exempt from the automatic stay if "the private interests do not significantly outweigh the public benefit from enforcement." Id. The Second Circuit has not yet decided which of these two tests should be applied, id. at 253, so Movants will examine them both out of an abundance of caution.

8.   Under either test, Section 362(b)(4) applies to the facts of this case.

4

1.  The Connecticut Action Satisfies The "Pecuniary Purpose" Test

9.  The Connecticut Action satisfies the "pecuniary purpose" test because it "relates to public safety and welfare," not to "the government's interest in the debtor's property." Id. at 252. The Second Circuit has described the kinds of "public safety and welfare" concerns that justify an exemption from the automatic stay, holding that Section 362(b)(4) applies "where a government unit is suing a debtor to prevent or stop violation of fraud, environmental protection, consumer protection, safety, or similar police or regulatory laws." City of New York v. Exxon Corp., 932 F.2d 1020, 1024 (2d Cir. 1991) (emphasis omitted). Numerous courts within and outside this Circuit have included anti-discrimination laws in this list. See, e.g., E.E.O.C. v. Le Bar Bat, Inc., 274 B.R. 66, 67-70 (S.D.N.Y. 2002); Patterson v. Newspaper & Mail Deliverers' Union of New York & Vicinity, 138 B.R. 149, 150-54 (S.D.N.Y. 1992); In re Mohawk Greenfield Motel Corp., 239 B.R. 1, 2-9 (Bankr. D. Mass. 1999). In Mohawk, for example, the court held that administrative proceedings in front of the Massachusetts Commission Against Discrimination ("MCAD") were exempted from the automatic stay, after finding that the MCAD was statutorily charged with eliminating discrimination and mitigating the effects of such discrimination. Mohawk, 239 B.R. at 7-8.

10.  Here, the Commission has the same statutory charge, and, with the assistance of Movants and their counsel, is fulfilling the same statutory mandate. The Commission is statutorily authorized (and compelled) to investigate discriminatory acts in housing and to file civil actions against wrongdoers who put the State's residents in danger, as was the case here. As a result of Ms. Peterson's discrimination, Movants lost their federal housing assistance and sustained compensatory damages in an amount to be proved at an upcoming hearing. The Commission filed the Connecticut Action on Movants' behalf to redress Ms. Peterson's violations of the State's fair housing laws – laws that affect not only the Movants but also *all*

residents of the State. This is precisely the kind of "public" concern that Section 362(b)(4) was designed to protect.

11.     While the Connecticut Action serves a strong public purpose, it does not advance "the government's interest in the debtor's property." Solis, 463 B.R. at 252. When analyzing whether a civil action "relates . . . to the government's interest in the debtor's property," courts consider the degree to which a judgment in that action will interfere with the orderly disposition of the debtor's property in bankruptcy court. Here, there will be no such interference. Even if Movants succeeded in obtaining a monetary judgment against Ms. Peterson in the Connecticut Action, they would not be able to enforce that judgment *in* the Connecticut Action – they would instead have to come to this Court. 11 U.S.C. § 362(b)(4). "[T]he suit's monetary claims would be subject to bankruptcy procedures just like any other claim against the debtor, and would not, therefore, confer any advantage on the government vis-à-vis other creditors." Solis, 463 B.R. at 254. See also Martin, 151 B.R. at 639 ("The court notes that the individuals claiming unpaid wages will not receive any extra priority by virtue of this action. Actual collection of the back pay and liquidated damages claims must proceed according to normal bankruptcy procedures."). Since Movants are not attempting to enforce a money judgment against Ms. Peterson's estate in the Connecticut Action, the Connecticut Action does not "relate[ ] . . . to the government's interest in the debtor's property." It is thus exempt from the stay.

          2.     The Connecticut Action Satisfies the "Public Policy" Test

12.     The Connecticut Action also satisfies the related "public policy" test because it effectuates the State's strong public policy against discrimination, and because any private interests animating the case do not "significantly outweigh" the benefit to the public. Solis, 463 B.R. at 252. As explained above, the Connecticut Action enforces the Commission's regulatory powers: through this lawsuit, the Commission can fulfill its mandate to prosecute violators of

anti-discrimination laws that are designed to protect the State's residents, including Movants. Conn. Gen. Stat. § 46a-56(a). An award of monetary damages – particularly punitive damages – "could deter unlawful behavior by others" faced with similar circumstances. Id. at 254.

13. As numerous courts have made clear, an action by a governmental unit may retain its "public" character – and the benefit of Section 362(b)(4) – even when some of the relief it seeks will ultimately be distributed to private parties. In Martin, for example, the Secretary of Labor sued a company for unfair labor practices and, as part of its complaint, requested damages on behalf of employees who had not been paid properly. The Court found that the Secretary's lawsuit was protected by Section 362(b)(4) even though the damages sought by the lawsuit would inure to the benefit of private parties (the employees), since those damages were "simply a method of enforcing the policies underlying" the fair labor statute. Martin, 151 B.R. at 639. Similarly, in Mohawk, the court held that administrative proceedings fell within Section 362(b)(4) even though those proceedings resulted in a money judgment in favor of a private party: "True, the entry of the award on Ms. Mayhew's behalf was of benefit to her. But that was not the only benefit. The award ensured that the Debtor, as well as others who might contemplate similar odious behavior, would be dissuaded from its future practice." Mohawk, 239 B.R. at 9. Other courts have followed the same approach in finding Section 362(b)(4) applicable even where private interests are at stake. See In re Ngan Gung Restaurant, Inc., 183 B.R. 689, 694 (S.D.N.Y. 1995) ("Moreover, that the government seeks to liquidate employee wage claims or to compel employers to make restitution of unpaid funds, does not alter the fact that it is acting pursuant to its police and regulatory authority."); In re Nelson, 240 B.R. 802, 806 (Bankr. D. Me. 1999) ("A proceeding which seeks restitution is not deprived of the applicability

of exceptions to the automatic stay merely because restitution bears a direct relationship to actual pecuniary losses.").

14.     Here, the relief sought in the Connecticut Action on behalf of Movants does not "deprive" the Connecticut Action "of the applicability of exceptions to the automatic stay." Nelson, 240 B.R. at 806. On the contrary, that relief serves the important public purpose of deterring other landlords in Ms. Peterson's position from unlawfully discriminating against tenants like the Movants. The request for punitive damages is especially well-suited to achieve this deterrent effect. At its core, the Connecticut Action furthers the State's interest in protecting its residents from unlawful discrimination in the area of housing. The automatic stay does not apply to such a lawsuit.

II.     IN THE ALTERNATIVE, MOVANTS ARE ENTITLED TO RELIEF FROM THE STAY FOR CAUSE UNDER 11 U.S.C. § 362(D)(1)

15.     If the Court finds that Section 362(b)(4) does not apply, Movants are nonetheless entitled to relief from the stay under 11 U.S.C. § 362(d)(1). Upon a showing of "cause," Section 362(d)(1) authorizes the Court to relieve Movants from the automatic stay, such as by "terminating, annulling, modifying, or conditioning" the stay. 11 U.S.C. §362(d)(1). While the statute does not define "cause," courts in the Second Circuit may consider a variety of factors, including:

> (1) whether relief would result in a partial or complete resolution of the issues; (2) lack of any connection with or interference with the bankruptcy case; (3) whether the other proceeding involves the debtor as a fiduciary; (4) whether a specialized tribunal with the necessary expertise has been established to hear the cause of action; (5) whether the debtor's insurer has assumed full responsibility for [a defense]; (6) whether the action primarily involves third parties; (7) whether litigation in another forum would prejudice the interests of other creditors; (8) whether the judgment claim arising from the other action is subject to equitable subordination; (9) whether the movant's success in the other proceeding would result in a judicial lien avoidable by the debtor; (10) the interests of judicial economy and the expeditious and economical resolution of litigation; (11)

8

> whether the parties are ready for trial in the other proceeding; and (12) [the] impact of the stay on the parties and the balance of harms.

In re Godt, 282 B.R. 577, 584 (E.D.N.Y. 2002) (citing Sonnax Indus., Inc. v. Tri Component Prods. Corp., 907 F.2d 1280, 1286 (2d Cir. 1990)). Not all of the Sonnax factors must always be considered, as the "facts of a particular case determine which factors will be relevant." Godt, 282 B.R. at 584. See also In re Burger Boys, Inc., 183 B.R. 682, 688 (S.D.N.Y. 1994); In re New York Med. Group, P.C., 265 B.R. 408, 413 (Bankr. S.D.N.Y. 2001) ("Not all of the factors are relevant in every case . . . and the court need not assign equal weight to each factor.").

16. Here, the relevant Sonnax factors support lifting the stay to permit Movants to prosecute the Connecticut Action against Ms. Peterson. First, lifting the stay would "result in a . . . complete resolution of the issues," because Movants would be able to obtain a final judgment on all of their remaining claims in the Connecticut Action. Second, the Connecticut Action will not interfere with the bankruptcy case: indeed, Ms. Peterson's active participation in the Connecticut Action for the last two years belies any assertion that the Connecticut Action's continuation will interfere at all with this bankruptcy. Third, the Connecticut Action involves third parties, including the two Movants and the Commission on Human Rights and Opportunities, a state agency statutorily charged with enforcing the State's anti-discrimination laws. Fourth, judicial economy favors lifting the stay: substantial resources have already been employed by Movants, by the Commission, and by the Connecticut Superior Court to bring the Connecticut Action to a close. Delaying the Connecticut Action will cause unwarranted delay and further expense. Fifth, the parties are "ready for trial" (a hearing in damages) in the Connecticut Action; indeed, that is the only remaining stage of the case. Sixth, the balance of harms favors lifting the stay, since again, Ms. Peterson will not be harmed by having to continue (for a brief period) litigating a case that she has actively litigated for two years. For all these

reasons, the stay should be lifted (if it is deemed to apply at all) to permit Movants to continue the Connecticut Action.

17. If the Court holds that the automatic stay applies to the Connecticut Action but grants Movants' motion for relief from that stay, Movants respectfully request that Fed. R. Bankr. P. 4001(a)(3) be declared inapplicable so that Movants can immediately enforce the Court's Order. A hearing in damages is currently scheduled in the Connecticut Action for January 28, 2013.

## CONCLUSION

For the foregoing reasons, Movants respectfully request that this Court grant their motion and confirm that Movants may pursue the Connecticut Action.

DATED: December 21, 2012

Respectfully submitted,

By: /s/ Jonathan Harris

JONATHAN A. HARRIS (ct27686)
AXINN, VELTROP & HARKRIDER LLP
90 State House Square
Hartford, CT 06103
Phone: (860) 275-8100
Facsimile: (860) 275-8101
jah@avhlaw.com

AARON J. FEIGENBAUM
(*pro hace vice* application to be submitted)
AXINN, VELTROP & HARKRIDER LLP
114 West 47th Street
New York, New York 10036
Phone: (212) 728-2200
Facsimile: (212) 728-2201
ajf@avhlaw.com

TIMOTHY BENNETT-SMYTH (ct27615)
CONNECTICUT FAIR HOUSING CENTER
221 Main Street
Hartford, CT 06106
Phone: (860) 263-0728
Facsimile: (860) 247-4236
tsmyth@ctfairhousing.org

ATTORNEYS FOR MOVANTS

UNITED STATES BANKRUPTCY COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| IN RE:<br>ALYSSA S. PETERSON,<br>    Debtor | )<br>)<br>) | Chapter 13<br>Case No. 10-23429 |
| ANN BEAULIEU AND JOHN BEAULIEU,<br>    Movants,<br>v.<br>ALYSSA S. PETERSON,<br>    Debtor,<br>MOLLY T. WHITON,<br>    Trustee. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Doc. I.D. No. _____<br><br><br><br>DECEMBER 21, 2012 |

**PROPOSED ORDER GRANTING MOTION FOR
CONFIRMATION OF EXEMPTION FROM AUTOMATIC STAY,
OR, IN THE ALTERNATIVE, FOR RELIEF FROM AUTOMATIC STAY**

After notice and a hearing, on Ann Beaulieu and John Beaulieu's ("Movants") Motion for Confirmation of Exemption from Automatic Stay, Or, In The Alternative, for Relief from Automatic Stay ("Motion"), Doc. I.D. No. _____,

**IT IS HEREBY ORDERED** that the Motion is **GRANTED**. The automatic stay in 11 U.S.C. § 362(a) does not apply to the civil action entitled <u>Commission on Human Rights and Opportunities ex rel. Ann and John Beaulieu v. Alyssa Peterson</u>, Case No. LLI-CV10-6002882-S (Superior Court, Judicial District of Litchfield, at Litchfield) (the "Connecticut Action"). Movants may pursue the Connecticut Action in accordance with 11 U.S.C. § 362(b)(4). **[OR, IN THE ALTERNATIVE:]** Movants are relieved from the automatic stay pursuant to 11 U.S.C. § 362(d)(1). **IT IS FURTHER ORDERED** that the 14-day stay of Fed. R. Bankr. P. 4001(a)(3) does not apply and Movants may immediately enforce and implement this Order.