UNITED STATES BANKRUPTCY COURT
DISTRICT OF CONNECTICUT
NEW HAVEN DIVISION

| | | |
|---|---|---|
| In re: | : | Case No.:  10-23429 (AMN) |
| | : | |
| ALYSSA S. PETERSON, | : | Chapter 13 |
| *Debtor* | : | |
| | : | Re: ECF No. 383, 387, 390, 495 |

**APPEARANCES**

Alyssa Peterson                                    *Pro Se*
297 Grandview Terrace
Hartford, CT 06114


Gregory F. Arcaro, Esq.                     Counsel for the Movant
Grafstein and Arcaro, LLC
10 Melrose Drive
Farmington, CT 06032


## RULING AND ORDER AFTER EVIDENTIARY
## HEARING ON MOTION FOR RELIEF FROM THE AUTOMATIC STAY

### INTRODUCTION

Before the court is a fourth motion by Laurelhart Condominium Association, Inc.

("Laurelhart") seeking relief from the automatic stay pursuant to 11 U.S.C. § 362(d)(1) to

proceed against the debtor, Alyssa Peterson ("Ms. Peterson") and property of Ms.

Peterson, specifically Units B-3 and G-7 located within the Laurelhart condominiums at

232 Farmington Avenue in Hartford, Connecticut.

The parties have travelled a long and winding road to get where they are today.

The history here is fraught with unfortunate frustration and contention.  As made clear by

the numerous hearings held, the parties were unable to agree on the amount of the pre-

and post-petition debt owed to Laurelhart.  Ms. Peterson spent significant amounts of time

1

highlighting discrepancies in the amount of the debt reported by Laurelhart or its attorney at various points in time from 2008 to the present. Laurelhart's own witness, its property manager, Eric Schaefer, admitted that its accounting ledger was unreliable beyond a two-year period. The amount of pre–petition arrearage directly impacts the amount of the post–petition arrearage and accordingly the court must determine the arrearage amounts to reach the issue of cause in considering relief from stay.

## UNITS B-3 AND G-7 PRE-PETITION BACKGROUND

Ms. Peterson owns two condominium units referred to throughout this case as, Unit B-3 and Unit G-7. All unit owners are members of Laurelhart and are subject to its governing documents, including a Declaration, Bylaws, and Rules and Regulations. Article VII of Laurelhart's Declaration authorizes the assessment of common charges to each unit to be paid monthly and section 7 provides:

> In the event of default by any Unit Owner in paying to the Association the Common Charges as determined by the Board of Directors, unless waived by the Board of Directors, such Unit Owners shall be obligated to pay interest at the rate of twelve (12) percent per annum on such Common Charges from the due date thereof, together with all expenses, including attorney's fees incurred by the Association in any proceeding brought to collect such unpaid charges.

Prior to the filing of this chapter 13 case, Laurelhart commenced two foreclosure actions against Ms. Peterson for alleged default in payment of common charges and late fees for Units B-3 and G-7. *See Laurelhart Condominium Association, Inc. v. Alyssa Peterson*, Docket Nos. HHD-CV09-5031917-S and HHD-CV09-5031918-S ("State Court Foreclosures"). The State Court Foreclosures were subsequently withdrawn.

## COMMENCEMENT OF CHAPTER 13 CASE

The following summary attempts to highlight the milestones of the bankruptcy procedural history. Approximately seven (7) years and four (4) months ago, on October

2

5, 2010, Ms. Peterson, proceeding *pro se*, commenced this voluntary chapter 13 bankruptcy case ("Petition Date").[1]  Pursuant to 11 U.S.C. § 521(a)(1)(B)(i), Ms. Peterson scheduled Laurelhart as a creditor holding an unsecured, priority claim of $3,500.00 for each of Unit B-3 and Unit G-7.[2]  ECF No. 2, P. 9.  In March of 2011, pursuant to 11 U.S.C. § 501(c), Ms. Peterson filed a proof of claim on behalf of Laurelhart for Unit B-3 and Unit G-7 in the aggregate amount of $14,288.00 for pre-petition condominium fees ("POC 16").[3]  POC 16-1.

On May 12, 2011, Laurelhart appeared through counsel, Howard S. Rosenberg, Esq. ("Attorney Rosenberg"), and filed a motion seeking relief from the automatic stay ("First Motion for Relief") to proceed with its State Court Foreclosures.  ECF No. 108.  The First Motion for Relief alleged that Ms. Peterson had failed to make post-petition payments.  ECF No. 108.  The hearing was marked "off" by the court on June 30, 2011, indicating it was no longer a pending motion having been withdrawn.

About six months later, in January of 2012, Laurelhart filed a second motion seeking relief from stay ("Second Motion for Relief") alleging that post-petition payments were not being made.  ECF No. 147.  Ms. Peterson objected to the Second Motion for Relief alleging that roof leaks caused by Laurelhart existed, and, as a result, she withheld the common charges due.  ECF No. 152.  Ms. Peterson also alleged that she made a payment of $1,624.00 to Laurelhart on January 8, 2012.  ECF No. 152, P. 2.  After a

---

[1] On February 18, 2011, Attorney Anthony Novak filed an appearance as counsel for Ms. Peterson. ECF No. 56.  Since then, Attorney Novak and Ms. Peterson advised the court that Attorney Novak's representation of Ms. Peterson essentially terminated with the confirmation of Ms. Peterson's chapter 13 plan.  *See* ECF Nos. 419 and 421.

[2] The court notes Laurelhart's claim is a secured, non-priority claim.  *See* Conn. Gen. Stat. §47-258(a).  For purposes of this ruling, this distinction does not affect the analysis.

[3] The Clerk of the Court sent a letter to Laurelhart notifying it that Ms. Peterson had filed a proof of claim on its behalf.  *See* ECF No. 65.  Laurelhart did not amend POC 16-1 or file its own proof of claim.

hearing, the court (Dabrowski, J.) granted the Second Motion for Relief by order dated March 20, 2012.[4]  ECF No. 156.

Almost one year later, on March 8, 2013, the court confirmed Ms. Peterson's Fifth Amended Chapter 13 Plan ("5th Amended Plan").  ECF No. 247.  The 5th Amended Plan provided for payment of the amount Ms. Peterson alleged was due through her filing of POC 16-1, an arrearage of $14,288.00, plus 5% interest to Laurelhart.  ECF No. 245, P. 6; POC 16-1.

Prior to the confirmation of Ms. Peterson's 5th Amended Plan, in February of 2013, Laurelhart filed a third motion for relief ("Third Motion for Relief"), alleging that since June 2012, Ms. Peterson failed to pay post-petition monthly common charges.  ECF No. 228.  Ms. Peterson objected, again raising the issue that the leaking roof had not been repaired, and offering to escrow payments pending resolution.  ECF No. 252.  During a hearing held on April 4, 2013 ("April 4th Hearing"), counsel for Laurelhart represented that the total due in post-petition payments for Units B-3 and G-7 was $4,791.00.[5]  ECF No. 254 at 00:01:25 - 00:01:40.[6]  At the conclusion of the April 4th Hearing, the court denied, without prejudice, the Third Motion for Relief as to Unit G-7 due to the continuing leaky roof issue.  ECF No. 254 at 00:16:07 – 00:16:35.  As to Unit B-3, the parties resolved that part of the Third Motion for Relief by agreement, reporting that Ms. Peterson would re-commence making monthly condominium payments of $189.00 per month and would pay $2,329.00 to cure the arrearage.  ECF No. 254 at 00:14:56 – 00:16:07.

---

[4] The record is unclear and the court recognizes it cannot explain why this order entered granting relief from stay in light of the events that subsequently followed.

[5] ECF No. 363, Transcript of Hearing before Judge Dabrowski, P. 3, L. 1-3.

[6] The court reviewed the audio file of the hearings using VLC Media Player.  All citations to the audio file of a hearing are to the ECF number of the recording and then to the location of the cited testimony as follows: ECF No. ___ at hours:minutes:seconds.

Approximately a year and a half after the April 4th hearing, Laurelhart requested a hearing regarding its Third Motion for Relief alleging that all repairs had been made to Unit G-7 and that no post-petition payments on either Unit had been made since the April 4th hearing.  ECF No. 303.  After a hearing on October 16, 2014, the court (Dabrowski, J.) granted Laurelhart's Third Motion for Relief as to both Units B-3 and G-7.  ECF No. 306.[7]

In January of 2015, Ms. Peterson commenced an adversary proceeding against Laurelhart.  Adversary Proceeding case number 15-2007.  In the adversary proceeding, Laurelhart is represented by Attorney Douglas Varga ("Attorney Varga").  The court has dismissed counts one and two of Ms. Peterson's adversary complaint.  See AP-ECF No. 94.[8]  Currently, the court has Laurelhart's motion for summary judgment as to counts three and four of the adversary complaint under advisement.

Approximately seven months after the order granting the Third Motion for Relief, the court (Nevins, J.) entered an order in aid of administration of the case directing Molly T. Whiton, the then Chapter 13 Standing Trustee, to file an accounting of payments she had made on behalf of the bankruptcy estate to Laurelhart.  ECF No. 337.  The Chapter 13 Standing Trustee filed the accounting on June 11, 2015, reporting that she had paid approximately $16,000 to Laurelhart between April 1, 2013 and October 17, 2014.  ECF 339, P. 3, 9.

Thereafter, on June 2, 2015, the court entered an order directing Laurelhart to appear and show cause why the court should not reconsider the Order granting the Third

---

[7] The court notes there is no audio record of this hearing available.  Ms. Peterson has maintained she had inadequate notice of the hearing and did not appear.

[8] References to docket entries of the adversary case number 15-2007 shall be made in the following format: "AP-ECF No. ___".

Motion for Relief.  ECF No. 340.  The June 2nd Order also directed Laurelhart to file an accounting of all post-petition common charges due from the date of the petition through September 2014 and all payments from any source paid to Laurelhart.  ECF No. 340.  On June 25, 2015, Laurelhart, represented by new counsel, Attorney Gregory F. Arcaro ("Attorney Arcaro") filed its accounting.  ECF No. 343.

Four days later, the court issued an order re-imposing the automatic stay ("Order Reimposing Stay") as it applied to Laurelhart and the State Court Foreclosures.  ECF No. 349.[9]  The Order Reimposing Stay also directed Ms. Peterson to produce evidence that she had deposited a sum equal to the monthly common charges due to Laurelhart for the months of June 2015, July 2015, August 2015, and September 2015, in a segregated, interest-bearing bank account.  ECF No. 349.

On October 23, 2015, Ms. Peterson filed an affidavit asserting that, rather than create a segregated, interest-bearing bank account as ordered by the Order Reimposing Stay, she paid $1,925.00 to Attorney Novak to hold in escrow.  ECF No. 378.  Thereafter, on November 3, 2015, the court issued an Order ("November 3rd Order") directing Ms. Peterson to file a document identifying the interest-bearing account (the "Account"), and the current balance of the Account, that she was directed to establish.  ECF No. 380.  The November 3rd Order instructed Ms. Peterson to file, every month, a bank statement or other similar document demonstrating that she had deposited the common charges owed to Laurelhart for that month in the Account.  ECF No. 380.  Ms. Peterson filed a document titled "Response to Order" objecting to the court's November 3rd Order.  ECF No. 388.

---

[9] The Order Reimposing Stay directed Laurelhart to file any Superior Court orders determining liability or damages against Ms. Peterson and a statement of proposed conclusions of fact and law.  On September 10, 2015, Laurelhart complied with the Order Re-imposing Stay, ECF No. 368.

Four days later, Laurelhart moved for the entry of order finding Ms. Peterson in contempt for her failure to comply with the Order Reimposing Stay. ECF No. 390. Ms. Peterson objected. ECF No. 397.

On November 13, 2015, Ms. Peterson filed a motion seeking to disallow POC 16 that she had submitted for Laurelhart's pre-petition arrearage. ECF No. 387. Laurelhart objected asserting that Ms. Peterson's motion lacked any legal basis. ECF No. 403.[10]

Also during this time in November of 2015, Laurelhart filed the – currently pending - motion seeking relief from the automatic stay pursuant to 11 U.S.C. § 362(d)(1) ("Fourth Motion for Relief"). ECF No. 383. The Fourth Motion for Relief alleged that Ms. Peterson had failed to tender any payment since November 5, 2014, and that as of the date of the motion she was $3,036.11 in arrears on Unit B-3 and $9,860.36 in arrears on Unit G-7. ECF No. 383, P. 2. Ms. Peterson objected. ECF No. 396.

Approximately twenty-one months after the court entered the Order Reimposing Stay, Ms. Peterson filed a notice stating that she had complied by establishing an interest bearing savings account at People's Bank and depositing $9,400.00 therein. ECF No. 464. In addition, Ms. Peterson represented that Laurelhart had withdrawn its two state foreclosure actions against her. ECF No. 464. Laurelhart filed a response stating that Ms. Peterson's notice failed to demonstrate compliance with the court's Order Reimposing Stay. ECF No. 468. Specifically, Laurelhart asserted that Ms. Peterson had not deposited funds each month beginning on June 29, 2015, nor had she provided bank statements to Laurelhart or filed them on the docket. Laurelhart attached as an exhibit

---

[10] The court is without explanation for the Clerk's docket entry, made on January 7, 2016, reflecting that the motion filed as ECF No. 387 was sustained. Subsequent to that docket entry, the court scheduled oral argument regarding the motion, ECF No. 387, to be heard with Laurelhart's Motion for Relief, ECF No. 383. *See* ECF No. 471.

an account statement reflecting a deposit of $9,400.00 into an account whose ownership was not indicated.  ECF No. 464, p. 4.

On March 31, 2017, the court issued an Order finding Ms. Peterson in Civil Contempt of Court (the "Contempt Order") reiterating its prior orders requiring that Ms. Peterson establish the Account, ordering her to identify the owner of the Account, "file with the court and submit to Laurelhart all bank statements of the Account for the period November 9, 2015 to the present, including the account number with all numbers except for the last 4 digits redacted," and "file evidence that the balance in the Account is at least $12,970, or [she] shall file a written explanation why the amount claimed by Laurelhart for unpaid, post-petition condominium fees as articulated in ECF No. 468 is wrong."  ECF No. 469.  The Contempt Order also ordered that Ms. Peterson would face a $50.00 per day sanction commencing with April 15, 2017 for each day on which she failed to comply, and a potential sanction that she pay Laurelhart's attorneys fees if she failed to comply. ECF No. 469.  On April 11, 2017, Ms. Peterson appealed the Contempt Order.  ECF No. 476.  Attached to her notice of appeal, Ms. Peterson attached a notarized letter from People's United Bank identifying an account in the name of Ms. Peterson with a balance of $9,400.11.  ECF No. 476, P. 3.  Less than two months later, the District Court dismissed the appeal.  *See In re: Alyssa Peterson*, case no. 3:17-cv-623 (JAM).

During a hearing on May 18, 2017 – that Ms. Peterson failed to attend – the court held that she remained in contempt, that the court would impose a sanction of $50.00 per day for twenty-one (21) days (totaling $950.00) for her non-compliance with the court's Contempt Order.  ECF No. 490 at 00:22:00 - 00:22:27.  The court reserved the opportunity to assess a further sanction against Ms. Peterson – including an award of attorney fees

8

to Laurelhart – to a future hearing and stated that the court would consider Laurelhart's Fourth Motion for Relief at that future hearing date.  ECF No. 490 at 00:23:00 – 00:23:34. Following the May 18, 2017 hearing, the court issued an Order to Show Cause ("Order to Show Cause") directing Ms. Peterson to appear before the court on June 2, 2017 and demonstrate compliance with the court's orders.  ECF No. 495.  The Order to Show Cause imposed a Nine Hundred and Fifty ($950.00) Dollar sanction against Ms. Peterson and warned her that the sanction of $50.00 per day continued to be in effect until such time Ms. Peterson fully complied with the court's Orders – ECF Nos. 349, 380, and 469.  ECF No. 495.  In response to the court's order to file affidavits detailing the amount of attorney's fees incurred as a result of the May 18, 2017 hearing, Laurelhart filed affidavits from Attorney Arcaro for Four Hundred and Forty Dollars ($440.00) and from Attorney Varga for Nine Hundred Eighteen Dollars and Thirty-Five Cents ($918.35).  ECF No. 493, 498.

On June 2, 2017, the court held a continued hearing regarding the court's Orders – ECF No. 380, 469, and 495 – and Laurelhart's Motion for Relief, ECF No. 383.  During the June 2, 2017 hearing, Attorney Arcaro, on behalf of Laurelhart, requested that Laurelhart's Fourth Motion for Relief be heard and considered at the same time as oral argument on Laurelhart's motion summary judgment filed in adversary proceeding number 15-2007.  ECF No. 504 at 00:55:30 – 00:57:37.  The court granted the request and continued the matter to June 29, 2017.[11]

---

[11] During a hearing held on July 6, 2017, Attorney Varga as counsel for Laurelhart in the adversary proceeding, noted that the procedural posture of the summary judgment motion was that the motion was scheduled for oral argument by the court, but that the evidentiary record for consideration of that motion was closed.  Part of Laurelhart's argument on summary judgment was that Ms. Peterson failed to properly contest the factual allegations in Laurelhart's D.Conn.L.Civ.R. 56(a)(1) Statement.  ECF No. 520 at 02:39:55 – 02:43:30.

Immediately prior to the June 29, 2017 hearing, Ms. Peterson filed bank account information indicating that an account at People's United Bank held a balance of Nineteen Thousand Nine Hundred Dollars and Fifty One Cents ($19,900.51).[12]   ECF No. 516. During the June 29, 2017 hearing, Attorney Arcaro acknowledged that the $19,900.51 amount was sufficient to cover Laurelhart's common charges assessed from June of 2015 forward to the hearing date of June 29, 2017, but argued it would not be sufficient to pay the entire post-petition arrearage.   ECF No. 517 at 00:02:08 – 00:02:53.   From Laurelhart's perspective, the post-petition arrearage for common charges and late fees through June 1, 2017 totaled $24,033.40, excluding any post-petition attorney fees or costs.[13]   ECF No. 517 at 00:04:07 – 00:05:36.

On July 6, 11, 20, 25, and 31, 2017, the court held oral argument regarding the Fourth Motion for Relief and heard testimony from Eric Schaefer ("Mr. Schaefer"), president of Advance Property Management ("APM") and from Ms. Peterson.   ECF No. 519, 520, 521, 527, 528, and 532.   Mr. Schaefer testified that the accounting ledger provided by APM and admitted by Laurelhart as Laurelhart's Exhibit 1 was unreliable as the software used to create the ledger was not accurate beyond a two-year period.   ECF No. 519 at 00:36:37 – 00:37:32; ECF No. 520 at 02:29:58 – 02:30:40.   In the alternative, Laurelhart presented a reconciliation created by Mr. Schaefer to support its debt amount. Laurelhart Ex. 5.   Based upon the reconciliation, Laurelhart claimed that for Unit B-3 the amount due from October 1, 2008 through July 1, 2017, after crediting all payments made

---

[12] A copy of the bank account information was marked as Exhibit A during the June 29, 2017 hearing.

[13] Laurelhart provided a breakdown by unit of the total arrearage: $7,455.57 was due for common charges and late fees attributable to Unit B3 and $16,577.83 was due for common charges and late fees attributable to Unit G7. ECF No. 517 at 00:04:45 – 00:05:5:21.

by Ms. Peterson or on her behalf, was $7,715.57.  Laurehart Ex. 5.  For Unit G-7,

Laurelhart claimed that the amount due from August 1, 2008 to July 1, 2017 was

$17,141.83.  Laurelhart Ex. 5.  Laurelhart asserted that the debt – as of July 1, 2017 for

pre- and post-petition amounts – totaled $24,857.40, excluding collection costs.  Ms.

Peterson also testified and admitted that no payments beyond those specified in Ex. 5

were made that should have been applied to her account.  ECF No. 521 at 00:01:32 –

00:46:73; ECF No. 527 at 03:13:53 – 03:14:58.  As explained in greater detail below, Ms.

Peterson contended that Laurelhart failed to properly credit the full amount of the

payments to her accounts for Units B-3 and G-7.  As noted above, Ms. Peterson also

spent considerable time documenting discrepancies in Laurelhart's claims at various

times before the state court and the bankruptcy court.

## JURISDICTION

The United States District Court for the District of Connecticut (the "District Court"),

has jurisdiction over this matter pursuant to 28 U.S.C. § 1334(b).  The Bankruptcy Court

derives its authority to hear and determine this matter pursuant to 28 U.S.C. § 157(a) and

the Order of Reference of the District Court dated September 21, 1984.  This is a core

proceeding pursuant to 28 U.S.C. § 157(b)(2)(A), (B), and (G).  This Court has the

statutory authority and jurisdiction over core proceedings pursuant to 28 U.S.C. §§

157(b)(1) and 1334 to hear and enter a final order in this matter subject to traditional

appeal rights.

## APPLICABLE LAW

It is fundamental that 11 U.S.C. § 362 automatically, upon the filing of a bankruptcy

petition under any chapter of the Bankruptcy Code, provides a broad stay of any litigation,

lien enforcement and other actions, judicial or otherwise, that are attempts to enforce or collect prepetition claims. 11 U.S.C. § 362(a). A party in interest, including a creditor, may seek relief from the automatic stay "for cause" pursuant to 11 U.S.C. § 362(d)(1). Courts have broad discretion in granting stay relief. *In re Bennett Funding Group, Inc.*, 212 B.R. 206, 211 (2d Cir. 1997). Section 362(d)(1) includes as cause a lack of adequate protection of a party's interest in property, and this is the most common basis for granting relief for cause. 3-362 Collier on Bankruptcy P 362.07 (2017). "Courts have found lack of adequate protection where a party is entitled to periodic post-petition payments from the debtor that remain unpaid." *Ford v. Board of Managers of Cameo Townhouses*, Docket No. 08CV2740(ADS), 2009 U.S. Dist. LEXIS 13124, at *16 (E.D.N.Y. Feb. 18, 2009); *In re Uvaydov*, 354 B.R. 620, 623 (Bankr. E.D.N.Y. 2006) ("[A] debtor's failure to make post-petition mortgage payments in bankruptcy rehabilitation proceedings can constitute cause for relief under § 362(d)(1)."); *In re Eatman*, 182 B.R. 386, 391-92 (Bankr. S.D.N.Y. 1995) (finding condominium board of managers entitled to relief from stay where the debtor owner had not paid common charges in years, which implied that he would not pay common charges in the future). The movant bears the initial burden of showing "cause." *In re Mazzeo*, 167 F.3d 139, 142 (2d Cir. 1999).

## CALCULATION OF LAURELHART'S DEBT

After careful consideration of the evidence submitted, including the testimony presented, and the other matters of record in the chapter 13 case and the adversary proceeding, the court makes the following findings and calculations of the debt owed by Ms. Peterson to Laurelhart.

1. APM, owned and managed by Eric Schaefer, provided property management services, including the collection of condominium fees due from owners, to Laurelhart at all relevant times.  ECF No. 519 at 00:14:44 – 00:16:08.

2. Article VII of Laurelhart's condominium declaration authorizes Laurelhart to assess each unit owner a common charge on each unit on a monthly basis.  AP-ECF No. 56-2 in case number 15-2007, Affidavit of Eric Schaefer, ¶¶ 8 and 9.  Ms. Peterson admitted that every month a new charge is assessed and it is the unit owner's responsibility to pay it.  ECF No. 527 at 03:23:05 – 03:23:35.

3. In the event that a unit owner fails to pay the common charge by the fifteenth of the month, a late charge of $25.00 is assessed.  ECF No. 519 at 00:43:06 – 00:43:20.

4. Section 7 of the Laurelhart Declaration provides that each unit owner shall be obligated to pay all expenses, including attorney's fees incurred by Laurelhart in any proceeding brought to collect such unpaid charges.  AP-ECF No. 56-2 in case number 15-2007.

5. Prior to the Petition Date, APM, acting on behalf of Laurelhart, engaged the services of Attorney Rosenberg to act as a collection attorney for Laurelhart to recover unpaid funds from Ms. Peterson.  ECF No. 519 at 00:59:43 – 01:02:35; 01:59:13 – 01:59:24.

6. APM's agreement with Attorney Rosenberg permitted Attorney Rosenberg to deduct his attorney's fees and costs incurred in collecting outstanding common charges from any funds received by him from the unit owner before the net funds

were paid by Attorney Rosenberg to Laurelhart. ECF No. 519 at 00:59:43 – 01:02:35; 01:59:27 – 02:03:04.

### Calculation of the Pre-Petition Debt

7. From October 1, 2008 through September 1, 2014, the monthly common charge for Unit B-3 was $189.00 and for Unit G-7 was $292.00. Laurelhart Ex. 1; ECF No. 519 at 00:40:44 – 00:40:58; ECF No. 527 at 03:39:24 – 03:39:41.

8. As to Unit B-3, Ms. Peterson acknowledged that twenty-six monthly common charges totaling $4,914.00 became due between September 1, 2008 through and including October 1, 2010. ECF No. 528 at 00:40:00 – 00:42:12. Applying a credit that existed prior to this time on her account, resulted in an amount of $4,754.00 owed to Laurelhart for common charges between September 1, 2008 through and including October 1, 2010. Laurelhart Ex. 1; ECF No. 528 at 00:42:12 – 00:42:58.

9. As of the Petition Date, Ms. Peterson owed $4,754.00 for unpaid common charges for Unit B-3.

10. Ms. Peterson admitted, and had no reason to dispute, that as to Unit G-7, she had a credit balance as of July 1, 2008 of $158.00. Laurelhart Ex. 5; ECF No. 527 at 03:19:40 – 03:20:59.

11. As to Unit G-7, Ms. Peterson acknowledged that twenty-seven monthly common charges totaling $7,884.00 became due between August 1, 2008 through and including October 1, 2010. ECF No. 528 at 00:20:06 – 00:20:58. Applying the credit balance of $158.00 resulted in an amount of $7,726.00 owed to Laurelhart for common charges between August 1, 2008 through and including October 1, 2010. ECF No. 528 at 00:20:58 – 00:21:16; 00:28:40 – 00:29:19.

12. As of the Petition Date, Ms. Peterson owed Laurelhart $7,726.00 for unpaid common charges for Unit G-7.

13. In 2009, Ms. Peterson made the following payments to Attorney Rosenberg, totaling $5,330.71:

    a. Check for $962.00 dated on or about March 31, 2009;

    b. Check for $1,198.33 dated on or about May 4, 2009;

    c. Check for $1,198.33 dated on or about June 18, 2009; and

    d. Check for $1,972.05 dated on or about November 16, 2009

    Laurelhart Ex. 5; ECF No. 528 at 00:49:02 – 00:49:27.

14. In 2010, Ms. Peterson made the following payments to Attorney Rosenberg or Laurelhart, totaling $4,472.05:

    a. Check for $1,972.05 dated on or about January 15, 2010;

    b. Check for $500.00 dated on or about April 26, 2010;

    c. Check for $500.00 dated on or about April 26, 2010;

    d. Check for $500.00 dated on or about April 26, 2010;

    e. Check for $500.00 dated on or about June 8, 2010;

    f. Check for $500.00 dated on or about June 8, 2010.

    Laurelhart Ex. 5; ECF No. 528 at 00:49:40 – 00:52:20.

15. During the hearing held on July 25, 2017, Ms. Peterson admitted that late fees of $25.00 per month should apply to the period before the Petition Date as to both Units.   ECF No. 528 at 00:55:20 – 00:55:31.   Specifically, for Unit B-3, Ms. Peterson acknowledged that twenty-six months of late fees, totaling $650.00 were owed to Laurelhart.   ECF No. 528 at 00:55:31 – 00:56:15.   For Unit G-7, Ms.

Peterson admitted that twenty-seven months of late fees, totaling $675.00 were owed to Laurelhart.  ECF No. 528 at 00:56:20 – 00:58:30.

16. The parties agreed that, as of the Petition Date, Ms. Peterson owed Laurelhart $4,002.24 for common charges and late fees after credit for payments made Ms. Laurelhart to Attorney Rosenberg without accounting for Attorney Rosenberg's attorney fees and costs.[14]  ECF No. 532 at 00:05:50 – 00:06:50; ECF No. 528 at 00:58:58 – 00:59:32; ECF No. 531.

17. Ms. Peterson admitted that she also owed, as of the Petition Date, $450.00 to Laurelhart for collection and processing fees.  ECF No. 532 at 00:08:09 – 00:08:45.

18. The amount Ms. Peterson owed Laurelhart as of the Petition Date for common charges, late fees and the $450.00 collection fee for Units B-3 and G-7, totaled **$4,452.24**.

### Attorney Rosenberg Attorney's Fees and Costs

19. Laurelhart asserted that its pre-petition claim should include an additional $4,222.00 that represents amounts paid by Ms. Peterson to Attorney Rosenberg that was unilaterally and without notice to Ms. Peterson retained by Attorney Rosenberg.  ECF No. 532 at 00:07:03 – 00:07:18.  When Ms. Peterson made payments to Attorney Rosenberg, Attorney Rosenberg would withhold his attorney's fees and costs from that amount and pay the remainder to Laurelhart. Laurelhart credited Ms. Peterson's account with the net amounts received from Attorney Rosenberg; Ms. Peterson received no notice of and no credit for

---

[14] Common Charges of $12,480.00 minus payments of $9,802.76, plus late fees of $ 1,325.00

attorney's fees deducted by Attorney Rosenberg.[15]  Ms. Peterson claimed that since this $4,222.00 amount was paid to Attorney Rosenberg, she should be given a credit of this amount on the debt to Laurelhart.  ECF No. 527 at 03:35:00 – 03:35:22.  Laurelhart claimed that it should not apply any credit for this amount and additionally that Ms. Peterson should owe this amount as reasonable attorney's fees and costs allowed pursuant to the Laurelhart declaration.  ECF No. 543, P. 3.  The court finds that Laurelhart has failed to provide sufficient evidence supporting entitlement to this amount.  First, Laurelhart's internal accounting records were admittedly unreliable and the court affords them little weight.  Secondly, Laurelhart's reconciliation, Ex. 5, fails to adequately provide a basis to evaluate this specific pre-petition amount.  Third, to the extent that Laurelhart claims that this amount represents attorneys' fees and costs, it has failed to provide any evidence such as invoices, time records, or testimony or affidavits from Attorney Rosenberg to support that claim.  Attorney Rosenberg was acting as an attorney or agent of Laurelhart.  Accordingly, the court excludes this amount ($4,222.00) from Laurelhart's pre-petition claims.

### Post-Petition Debt Owed to Laurelhart

20. The amount of common charges owed for Unit B-3 for the post-petition period from November 1, 2010 through and including July 1, 2017, totaled $16,015.00.  ECF No. 528 at 01:07:47 – 01:08:37.  The court arrived at this total from the following calculation:

---

[15] The court notes that Laurelhart introduced evidence that Ms. Peterson received $7,000.00 from Attorney Rosenberg as part of a settlement.

a. From November 1, 2010 through September 1, 2014, the monthly common charge for Unit B-3 was $189.00.  Laurelhart Ex. 1, 5; ECF No. 519 at 00:40:44 – 00:40:57; ECF No. 527 at 03:39:24 – 03:39:41.  Multiplying $189.00 by forty-seven months equals $8,883.00 in common charges due from November 1, 2010 to September 1, 2014.  ECF No. 528 at 01:05:50 – 01:06:24; ECF No. 543, P. 4.

b. Starting October 1, 2014 through and including September 1, 2015, the monthly common charge for Unit B-3 increased to $202.00 per month.  Laurelhart Ex. 5.  Multiplying $202.00 by twelve months equals $2,424.00 of common charges dues for this period.  Laurelhart's Ex. 5; ECF No. 528 at 01:06:40 – 01:07:00; ECF No. 543, P. 4.

c. The monthly common charge for Unit B-3 increased to $214.00 per month for the period of October 1, 2015 to July 1, 2017.  Laurelhart Ex. 5; ECF No. 528 at 01:07:10 – 01:07:19.  Multiplying twenty-two months by $214.00 per month results in $4,708.00 due in common charges from October 1, 2015 through and including July 1, 2017.  ECF No. 528 at 01:07:31 – 01:07:47.

21. The amount of common charges owed for Unit G-7 for the period of November 1, 2010 though and including July 1, 2014, totaled $24,762.00.  ECF No. 528 at 01:11:40 – 01:12:08.  That total was derived by the following calculations:

a. As to Unit G-7, from November 1, 2010 to and including September 1, 2014, the monthly common charge was $292.00.  Laurelhart Ex. 1, 5; ECF No. 519 at 00:40:44 – 00:40:57; ECF No. 527 at 03:39:24 – 03:39:41.  Multiplying $292.00 by forty-seven months equals $13,724.00 in common

charges due from November 1, 2010 to September 1, 2014.  ECF No. 528 at 01:08:51 – 01:09:33; ECF No. 543, P. 4.

    b.  From October 1, 2014 through and including September 1, 2015, the monthly common charge for Unit G-7 increased to $313.00 per month. Laurelhart Ex. 5.  Multiplying $313.00 by twelve months equals $3,756.00 of common charges dues for this period.  Laurelhart's Ex. 5; ECF No. 528 at 01:10:05 – 01:10:15; ECF No. 543, P. 4.

    c.  The monthly common charge for Unit G-7 increased to $331.00 per month for the period of October 1, 2015 to July 1, 2017.  Laurelhart Ex. 5; ECF No. 528 at 01:10:00 – 01:10:10.  Multiplying twenty-two months by $331.00 per month results in $7,282.00 due in common charges from October 1, 2015 through and including July 1, 2017.  ECF No. 528 at 01:11:20 – 01:11:33.

22. Adding the amount of post-petition common charges due from November 1, 2010 to and including July 2017 set forth in ¶ 20 and 21, the total post-petition amount due for both Units through July 31, 2017 is $40,777.00.  ECF No. 528 at 01:12:09 – 01:12:50.

23. The parties agreed that the following payments, totaling $16,291.06,  were made by the Chapter 13 Standing Trustee to Laurelhart

    a.  Check dated on or about April 1, 2013 for $538.95;

    b.  Check dated on or about April 15, 2013 for $10,388.82;

    c.  Check dated on or about October 14, 2014 for $5,320.22;

    d.  Check dated on or about July 26, 2016 for $43.07.

    ["Chapter 13 Trustee Payments"].  Laurelhart Ex. 5.

24. Ms. Peterson admitted that, in addition to the Chapter 13 Trustee Payments, the following payments, totaling $12,856.78, constituted the universe of post-petition payments made either by Ms. Peterson or any other source:

    a.  Check dated on or about June 29, 2011 for $4,398.00;

    b.  Check dated on or about December 27, 2011 for $500.00;

    c.  Check dated on or about December 27, 2011 for $1,062.00;

    d.  Check dated on or about March 19, 2012 for $3,067.00;

    e.  Check dated on or about June 5, 2012 for $1,062.00;

    f.  Check dated on or about April 9, 2013 for $2,128.67;

    g.  Check dated on or about July 26, 2013 for $200.11;

    h.  Check dated on or about July 26, 2013 for $189.00;

    i.  Check dated on or about February 3, 2014 for $250.00;

["Ms. Peterson Payments"].  Laurelhart Ex. 5; ECF No. 521 at 00:01:32 – 00:46:73; ECF No. 527 at 03:13:53 – 03:14:58; ECF No. 528 at 01:13:28 – 01:22:53.

25. Applying the Chapter 13 Trustee Payments to the pre-petition arrearage of $4,452.24 cures the pre-petition arrearage.  In light of the court's determination of the pre-petition arrearage amount, an amount of $11,838.82 remains from the Chapter 13 Trustee Payments for application against the post-petition arrearage.

26. Applying the remaining portion of $11,838.82 of the Chapter 13 Trustee payments, plus Ms. Peterson Payments of $12,856.78 against the post-petition common charge arrearage of $40,777.00, the unpaid post-petition common charge arrearage is $16,081.40.

### Post-Petition Late Fees

27. Laurelhart claims that it is entitled to late fees throughout the entire eighty-one month period from November 1, 2010 to July 1, 2017.  Laurelhart Ex. 5; ECF No. 543, P. 4.

28. During the hearing held on July 31, 2017, Ms. Peterson acknowledged the following as periods of time that she did not make any payments and that $2,000 of late fees accrued:

    a. From February 2014 through September 2014, Ms. Peterson admitted she did not make any payments and $400.00 late fees accrued.  ECF No. 532 at 00:39:54 – 00:42:10.

    b. From December 2014 to September 2015, Ms. Peterson admitted that she failed to make payments and ten months of late fees, totaling $500.00 accrued.  ECF No. 532 at 00:44:50 – 00:46:07; 00:48:00 – 00:48:49.

    c. For the next 22 months - from October 2015 to July 2017 - Ms. Peterson acknowledged that late fees for twenty-two months totaling $1,100.00 accrued.  ECF No. 532 at 00:52:19 – 00:53:34.

29. After consideration of the parties' arguments and the evidence, court declines to find that Laurelhart is entitled to any late fees beyond Ms. Peterson's admitted $2,000.00.   The evidence submitted highlighted the inaccuracies and discrepancies that existed in Laurelhart's accounting records.  There are numerous examples, at various times over the last seven years, where Laurelhart claimed, either in court or in written correspondence to Ms. Peterson, that a certain amount was due.  The court notes that when those certain amounts are compared with the

accounting ledger admitted as Laurelhart's Ex. 1, the amounts are inconsistent and cannot be easily reconciled.  Laurelhart's own witness, Mr. Schaefer, testified that he doubted the accuracy of his accounting program beyond a two-year period. ECF No. 520 at 02:30:00 – 02:30:40.  Nothing submitted by Laurelhart provided the court with a reliable accounting showing what was due and what was credited on a month-to-month basis.  Further, Laurelhart Exhibits 1 and 5 each showed instances where significant time lapses existed between payments by either Ms. Peterson or someone on her behalf, and Laurelhart's application of those payments to the debt owed.  In light of the unreliability of the evidence, discrepancies in the amounts claimed at various times, and lack of an accurate accounting, the court finds that Laurelhart has not provided a sufficient basis to justify late fees for the entire eighty-one month post-petition period.

30. Based on the foregoing, the court finds that the amount of common charges and late fees due, post-petition through July 31, 2017, totals **$18,081.40**.

**Post-July 31, 2017 Hearing Common Charges & Payments**

31. On July 27, 2017, the court ordered Ms. Peterson to deliver a bank check in the amount of $14,246.00 to Attorney Varga to be held in trust pending further order of the court.  ECF No. 529.

32.  Additionally, on August 4, 2017, the court ordered Ms. Peterson to deliver a bank check in the amount of $4,893.25 to Attorney Varga to be held in trust.  ECF No. 533.  The court further ordered Ms. Peterson to remit the common charges owed to Laurelhart each month to Attorney Varga to be held in trust.  ECF No. 533.

33. After the July hearings, additional common charges and late fees became due for the period of August 1, 2017 through and including February 1, 2018.  The court calculates that the post-hearing common charges total $3,815.00, as follows:

    a.  For Unit B-3 at $214.00 per month for seven months, common charges total $1,498.00; and

    b.  For Unit G-7 at $331.00 per month for seven months, common charges total $2,317.00.

34. On February 20, 2018, the parties stipulated that funds in the amount of $22,451.25, being held by Attorney Varga should be paid to Laurelhart.  ECF No. 572, 573.

35. Adding the $18,081.40 post-petition arrearage through July 31, 2017 to the post-hearing arrearage of $3,815.00, totals **$21,896.40** as the post-petition common charges due as of February 28, 2018.

36. Applying the funds released by Attorney Varga to the post-petition common charges and late fees due as of February 2018, results in a credit balance in Ms. Peterson's favor of $554.85.

**Attorney's Fees Related to the Motion for Relief from Stay**

37. Laurelhart in its post-hearing brief, ECF No. 543, requested an award of $5,580.00 of attorney's fees for time spent attending hearings on the motion for relief from stay.  As noted above in paragraph number 6, Laurelhart's Declaration provides that unit owners are liable for legal fees incurred in connection with the collection of common charges.  The request seeks compensation for 24.7 hours of time spent attending hearings at a rate of $200.00 per hour and 3.2 hours of time spent

researching and drafting the post-hearing brief. ECF No. 543. Based upon the court's familiarity with the record of this case, the court finds this request for attorney's fees only related to the hearings and the post-trial brief is reasonable and likely a *de minimus* amount compared to the actual amount of time incurred over the five year period since confirmation of the 5th Amended Plan and the twenty-seven month period since the Fourth Motion for Relief was filed. Accordingly, the court finds that Laurelhart is entitled to $5,580.00 in attorney's fees.

**CONCLUSION**

Laurelhart's Fourth Motion for Relief did not facially present a complicated request for relief. The dispute that led to this ruling was fueled by missteps of both parties, including Ms. Peterson's defiance of court orders and failure to make payments when due and by Laurelhart's inability to cogently account for its claim. As stated above, the court has found that the pre-petition debt owed by Ms. Peterson to Laurelhart for Unit B-3 and G-7 is $4,452.24. Laurelhart's post-petition claim through February 28, 2018 totaled $21,896.40. By application of the $22,451.25 amount held by Attorney Varga in escrow, the $21,896.40 post-petition arrearage has been satisfied with a $554.85 credit in favor of Ms. Peterson as of February 28, 2018. See ¶¶ 34 -36. Laurelhart is entitled to attorney's fees of $5,580.00 for the time incurred in prosecution of the Fourth Motion for Relief. Additionally, based upon the record of this case and the amount of time spent by counsel for Laurelhart pursuing the motion for contempt, ECF No. 390, the court concludes that Laurelhart is entitled to an award of attorney's fees of $1,358.35. See ECF No. 493 and 498. Therefore, Laurelhart's awarded attorney's fees for the motion for

relief and the motion for contempt totals $6,938.35.  Applying the $554.85 credit to the attorney's fees owed, a balance of $6,383.50 remains due from Ms. Peterson to Laurelhart.  In light of the history and record of this proceeding and the calculations made herein, the court concludes that cause to grant the Fourth Motion for Relief does not exist if the **$6,383.50** of attorney's fees is paid within a reasonable time.

   **NOW THEREFORE, it is hereby**

   **ORDERED**, that, Ms. Peterson shall pay to Laurelhart Six Thousand Three Hundred and Eighty Three Dollars and Fifty Cents ($6,383.50); and it is further

   **ORDERED**, that, the stay pursuant to § 362(a) shall automatically terminate on May 4, 2018, unless a statement is filed that the Six Thousand Three Hundred and Eighty Three Dollars and Fifty Cents ($6,383.50) amount now due for attorney's fees was paid or that the parties stipulate to payment terms extending beyond that May 4th date; and it is further

   **ORDERED**, that, the motion to disallow POC 16-1, ECF No. 387, is denied; and it is further

   **ORDERED**, that, Ms. Peterson is directed to pay to the Clerk of the Court Nine Hundred and Fifty Dollars ($950.00) representing the sanction imposed by this court's Order dated May 23, 2017, ECF No. 495; provided, however, that if Ms. Peterson pays the amount now due to Laurelhart timely (i.e., within sixty (60) days of the entry of this Order or within such further time as might be agreed to by Laurelhart), then the court will waive the requirement to pay the sanction to the Clerk of the Court; and it is further

**ORDERED**, that, no further sanctions shall be imposed related to Laurelhart's motion for contempt, ECF No. 390, the court's Order Finding the Debtor in Civil Contempt, ECF No. 469, or the court's Orders to Show Cause, ECF Nos. 349, 380, and 469.

Dated on March 2, 2018, at New Haven, Connecticut.

*Ann M. Nevins*
United States Bankruptcy Judge
District of Connecticut