UNITED STATES BANKRUPTCY COURT
DISTRICT OF CONNECTICUT
NEW HAVEN DIVISION

| | | |
|---|---|---|
| In re: | : | Case No.: 10-23429 (AMN) |
| ALYSSA S. PETERSON | : | Chapter 13 |
| *Debtor.* | : | |
| | : | Re: ECF No. 660, 662, 664 |

# MEMORANDUM OF DECISION AND ORDER
# DENYING MOTIONS FOR RECONSIDERATION AND TO SHOW CAUSE

Pending before the Court are three motions filed by the *pro se* debtor, Alyssa S. Peterson ("Debtor" or "Ms. Peterson"), which she titles as follows:

1. Motion and Memorandum for Reconsideration (ECF No. 660)("Motion for Reconsideration");

2. Corrected Motion for Order to Show Cause (ECF No. 662)("First Show Cause Motion"); and,

3. Second Request/Motion for Order to Show Cause (ECF No. 664)("Second Show Cause Motion"; together with the First Show Cause Motion, the "Show Cause Motions").

The Motion for Reconsideration was previously granted to the extent it sought to reopen the Chapter 13 case to permit the Debtor to object to the Chapter 13 Standing Trustee's Final Report; and any additional relief sought is addressed in this Memorandum of Decision. *See*, ECF No. 666. In essence, Ms. Peterson asserts that the Chapter 13 Standing Trustee's Final Report ("Final Report"), ECF No. 656, contains an error because it fails to account for $25,000 of funds allegedly "received" by her Chapter 13 estate, and, the Final Report was filed with intent to harm Ms. Peterson. Ms. Peterson – having not received a Chapter 13 discharge because the Final Report indicates a shortfall in Chapter

1

13 Plan payments – further asserts that she should be awarded a discharge *nunc pro tunc*. ECF No. 660.

The First Show Cause Motion seeks an order directing the Chapter 13 Standing Trustee, her staff, and the Office of the United States Trustee to show cause: (1) why the Final Report does not account for the same $25,000; and, (2) why the former Chapter 13 Standing Trustee, Molly Whiton ("Former Trustee") failed to take action regarding the $25,000. ECF No. 662.

The Second Show Cause Motion includes the same arguments, with some additional detail, and seeks the same relief as the First Show Cause Motion. ECF No. 664.

On November 30, 2018 (the same day the case was reopened), the Court entered a Scheduling Order providing Ms. Peterson with the opportunity to file any additional documents or memoranda setting forth her arguments regarding the Final Report and the Chapter 13 Standing Trustee the opportunity to respond. ECF No. 666. While, Ms. Peterson did not file any additional documents or memoranda in support of her arguments, on January 11, 2019, the Chapter 13 Standing Trustee filed a response to Ms. Peterson's motions. ECF No. 668.[1]

Familiarity with prior decisions in and related to this case, including adversary proceeding case number 17-2081, ECF No. 6, is assumed. The Court finds that the pending motions are amenable to resolution without further hearing. Because the Court concludes -- based on the fulsome record of this more than eight (8) year old Chapter 13

---

[1] The Chapter 13 Standing Trustee also filed an amended final report. ECF No. 669. The Court notes that the amended final report contains no material changes from the original Final Report.

2

case -- that none of the arguments in the Motion for Reconsideration and the Show Cause Motions have merit, they are each denied.

## I. RELEVANT PROCEDURAL HISTORY

### a. Ms. Peterson's Chapter 13 Bankruptcy Case

On October 5, 2010, Ms. Peterson, proceeding *pro se*, filed a voluntary Chapter 13 bankruptcy petition (the "Petition Date").[2] ECF No. 1. From the Petition Date through August 31, 2017, Ms. Peterson's Chapter 13 bankruptcy was assigned to the Former Trustee. Approximately two and a half years after the Petition Date, on March 7, 2013, Ms. Peterson's Fifth Amended Chapter 13 Plan (the "Plan") was confirmed. ECF No. 245. The Plan required payments from Ms. Peterson to the Chapter 13 Standing Trustee for a period of sixty (60) moths. The term of the Plan expired on March 8, 2018. *See*, 11 U.S.C. §§ 1322, 1325, 1328; *See also*, ECF No. 641.

### b. Ms. Peterson's Judgment against Hannah Woldeyohannes

A brief background regarding a pre-bankruptcy judgment obtained against a third party, Hannah Woldeyohannes ("Ms. Woldeyohannes") is important to understanding Ms. Peterson's Plan and the pending Motions.[3] In January of 2011, Ms. Woldeyohannes filed a voluntary Chapter 7 bankruptcy petition, thus commencing bankruptcy case number 11-20003 (the "Woldeyohannes Case"). In the Woldeyohannes Case, Ms. Peterson filed a proof of claim asserting a claim against Ms. Woldeyohannes in the amount of $248,117.52. 11-20003, Proof of Claim 2-1 ("POC 2-1"). As a basis for her claim, Ms.

---

[2] Five months after the Petition Date, Ms. Peterson retained Attorney Anthony Novak as counsel. ECF No. 56. Since then, Attorney Novak and Ms. Peterson advised the Court that Attorney Novak's representation of Ms. Peterson essentially terminated with the confirmation of the Plan. *See* ECF Nos. 419 and 421.
[3] The Court takes judicial notice of the documents filed in Ms. Woldeyohannes's Chapter 7 bankruptcy case ("Woldeyohannes Case"), case number 11-20003 and in Ms. Peterson's Chapter 13 bankruptcy case, case number 10-23429.

3

Peterson attached a copy of a state court judgment dated November 13, 2009, obtained against Ms. Woldeyohannes ("Woldeyohannes Judgment") in an action pending before the Connecticut Superior Court entitled *Alyssa Peterson v. Hannah Woldeyohannes* and bearing docket number HHD-CV-04-0834966-S.  POC 2-1, p. 6.  The Woldeyohannes Judgment awarded Ms. Peterson damages of $118,500.00 and was later amended to include an award of interest, bringing the total award to $195,482.96 as of November 13, 2009.  11-20003, POC 2-1, pp. 5, 20; *See also* 10-23429, ECF No. 18 - Ms. Peterson's Schedule A.  The Woldeyohannes Judgment also determined that Ms. Woldeyohannes was the sole owner of a limited liability company named A to Zee, LLC, and prohibited Ms. Woldeyohannes from assigning her interest in A to Zee, LLC, and/or encumbering the assets owned by A to Zee, LLC.  11-20003, POC 2-1, p. 6.

In May of 2012, the Court (Dabrowski, J.) acting in the Woldeyohannes Case granted Ms. Peterson's motion seeking relief from the automatic stay to pursue collection of the Woldeyohannes Judgment.  11-20003, ECF Nos. 56, 61.  Thereafter, in December of 2012, Ms. Peterson filed an amended motion for relief seeking permission to pursue collection of the Woldeyohannes Judgment against the assets of A to Zee, LLC.  11-20003, ECF No. 85.  In her amended motion, Ms. Peterson noted that subsequent to the entry of the Woldeyohannes Judgment, she commenced an action entitled *Alyssa Peterson v. Carlton Hume, Hume & Associates, LLC, J. Hanson Guest, Guest & Associates, LLC, A to Zee, LLC, Mussie Russom, Sofia Woldeyohannes, Yodit Woldeyohannes, and Isaias Woldeyohannes*, bearing docket number HHD-CV-11-5035394-S (the "Carlton Hume Litigation").  *See* 11-20003, ECF No. 85.  As part of the Carlton Hume Litigation, Ms. Peterson obtained a State Court order of prejudgment remedy attachment in the amount of One Hundred Fifty-Two Thousand ($152,000.00)

4

Dollars against the real estate owned by A to Zee, LLC. 11-20003, ECF No. 85. Judge Dabrowski granted Ms. Peterson's amended motion seeking relief from stay to pursue the Carlton Hume Litigation, conditioned as follows:

> ORDERED that the automatic stay of § 362(a) is modified pursuant to § 362(d) to permit [Ms. Peterson] to pursue recovery of her interests in [Ms. Woldeyohannes'] ownership interests in the Connecticut limited liability company known as A to Zee, LLC (hereinafter, "A to Zee"), and any assets of A to Zee, including condominium property and bank accounts held under injunction by order of the Connecticut Superior Court since May 21, 2012.
>
> IT IS FURTHER ORDERED that so long as [Ms. Peterson's] Chapter 13 case is pending (or if said Chapter 13 case is converted to Chapter 7, so long as the Chapter 7 case remains pending) (i) any compromise or settlement agreement related to [Ms. Peterson's] attempt to recover said assets of A to Zee, shall be subject to approval of this Court upon a Motion to Approve such Settlement or Compromise, following notice and a hearing thereon in Case No. 10-23429, and (ii) any funds or other property recovered as a result of an approved settlement or compromise, or otherwise recovered, shall be immediately turned over to Molly Whiton, Chapter 13 Trustee, or to any successor Chapter 7 trustee should [Ms. Peterson's] Chapter 13 case be converted to Chapter 7, or to such other person as may be designated in writing by the Chapter 13 Trustee or any subsequent Chapter 7 trustee, to be administered as a part of [Ms. Peterson's] bankruptcy estate in Case No. 10-23429.
> 11-20003, ECF Nos. 91, 106 (Judge Dabrowski later amended the first decretal paragraph).

This Order was also docketed in this case as ECF No. 215.

During the course of Ms. Woldeyohannes's Chapter 7 case, her Chapter 7 Trustee obtained approval to settle her estate's claims against Carlton Hume, Hume & Associates, LLC. 11-20003, ECF No. 151. Thereafter, over objection by Ms. Peterson, the Court approved the Chapter 7 Trustee's final report and Ms. Woldeyohannes's Chapter 7 case was closed without a bankruptcy discharge. *See* 11-20003, ECF Nos. 79, 172, and docket entry dated June 26, 2014. The Court subsequently denied Ms. Peterson's motion to re-open Ms. Woldeyohannes's Chapter

5

7 case and her request for reconsideration of that denial. See 11-20003, ECF Nos. 200, 204.

### c. Ms. Peterson's Chapter 13 Plan

Ms. Peterson proposed to fund her Plan primarily through proceeds of settlements or the collection of judgments against various third parties. In particular, the Plan contained the following funding-related provisions:

> In addition to pre-confirmation payments, if any, being held by the Trustee, Alyssa S. Peterson shall pay to the Trustee the sum of $200.00 each month for the duration of the plan. At confirmation, the Debtor shall make a lump sum payment of $70,155.46 being held in escrow by Attorney Anthony S. Novak which represents the remainder of a $87,500.00 settlement now in escrow received from one defendant in the matter *Peterson v. Connecticut Attorneys Title Insurance Company (CATIC), et al.*, Hartford Superior Court, Docket No. HHD-CV-10-5034546-S, following approval by the Court.
>
> In addition, she will turn over the following assets and/or judgments when received:
>
> …
>
> b) Various net rental income as received per a Judgment obtained in the matter *Peterson v. Woldeyohannes*, Hartford Superior Court Docket No. CV-04-0834966-S, wherein Debtor is expected to assume 100% interest in the property of the limited liability company, A to Zee LLC, which property interest is valued to be $120,000.00, and net monthly rental income from which is estimated to be $1,500.00 monthly, and is to be turned over once collected to the Chapter 13 Trustee per Order of the Court (Dabrowski, J.) ECF Doc. 85 dated February 14, 2013 in the Chapter 7 matter, #11-20003, Hannah Woldeyohannes, Debtor;
>
> c) Proceeds of an escrowed bank account (estimated to be $15,000.00), which sum represents escrowed rents from the A to Zee LLC condos when released by the Hartford Superior Court in the matter *Peterson v. Woldeyohannes supra*, and then to the Chapter 13 Trustee per Order of the Court (Dabrowski, J.) ECF. Doc. 85 dated February 14, 2013 in the Chapter 7 matter, #11-20003, Hannah Woldeyohannes, Debtor;
>
> d) The proceeds from a legal malpractice lawsuit estimated to be $70,000.00 or greater in the matter *Woldeyohannes v. Carlton Hume, et al.*, Hartford Superior Court Docket No. CV-12-6028634-S, initiated by the Chapter 7 Trustee, John O'Neil, who is overseeing the bankruptcy estate of #11-20003,

6

Hannah Woldeyohannes, Debtor, wherein the Chapter 13 Debtor Alyssa Peterson is the only Creditor with a claim in excess of $250,000.00 (including post-judgment interest and costs);

e) Proceeds from the matter *Peterson v. Hume et al.*, Hartford Superior Court Docket No. CV-11-5035394-S, in which a malpractice insurance policy plus a real estate asset valued at $135,000.00 have been attached by the Hartford Superior Court by prejudgment remedy on behalf of the Debtor to ensure payment;

…

h) Any and all funds received from the foregoing assets or judgments shall be turned over to the Chapter 13 Trustee within thirty (30) days of receipt by the debtor or her counsel. Failure to turn over funds in a timely manner is grounds for this case being dismissed.
ECF No. 245, p. 2-4.

The Plan promised to pay general unsecured creditors a 100% dividend, and despite concerns of creditors regarding feasibility, Judge Dabrowski confirmed the Plan on March 8, 2013. ECF Nos. 245, p. 7, 247.

### d. Motion to Approve Settlement of Carlton Hume Litigation

Halfway through the 5-year plan period -- on November 12, 2015 -- Ms. Peterson filed a motion seeking approval of a settlement of her claims against Carlton Hume in the Carlton Hume Litigation (the "Settlement Motion").[4] ECF No. 385. The proposed settlement consisted of a Sixty Thousand ($60,000) Dollar payment by Carlton Hume's insurance company to Ms. Peterson. ECF No. 385. In the Settlement Motion, Ms. Peterson noted that Carlton Hume's insurance company also proposed a settlement of an A to Zee, LLC cross-claim[5] by payment of Twenty-Five Thousand ($25,000) Dollars to

---

[4] The Settlement Motion was filed by Attorney Novak, who resurfaced as Debtor's counsel for that motion.

[5] In the Carlton Hume Litigation, A to Zee, LLC (and various individuals) filed a two-count cross-claim against Carlton Hume and Hume and Associates ("Carlton Hume") alleging that Carlton Hume committed malpractice in their representation of A to Zee, LLC. *See* Memorandum of Decision dated March 30, 2015 entered by Judge Robert Vacchelli in the Carlton Hume Litigation. The docket of the Carlton Hume Litigation is available to the public online at http://civilinquiry.jud.ct.gov/GetDocket.aspx.

7

Document      Page 8 of 17

A to Zee, LLC. It is this possible settlement between Carlton Hume's insurance company and A to Zee, LLC that forms the crux of Mr. Peterson's dissatisfaction. By way of the Settlement Motion, Ms. Peterson sought to block the payment to A to Zee, LLC asserting that the Chapter 7 Trustee of Ms. Woldeyohannes's Bankruptcy case was the proper party to receive the $25,000 settlement. ECF No. 385. Ms. Peterson requested the Court schedule an evidentiary hearing to determine the proper recipient of the $25,000. ECF No. 385.

During a hearing held on January 13, 2016 regarding the Settlement Motion, counsel representing Carlton Hume noted there was no state court judgment against A to Zee, LLC.[6] ECF No. 417 at 01:46:00 – 01:49:30. Counsel for A to Zee, LLC appeared at the January 13, 2016 hearing and objected to Ms. Peterson's request for this Court's involvement regarding the proposed $25,000 settlement with A to Zee, LLC. ECF No. 417 at 01:56:50 – 2:02:57. After questioning by the Court, counsel for Ms. Peterson was unable to articulate how the Court would have jurisdiction in this case to approve or control any $25,000 settlement between Carlton Hume and A to Zee, LLC. ECF No. 417 at 02:12:31 – 02:13:51.

Following the hearing, on January 15, 2016, the Court entered an Order approving the Settlement Motion only insofar as it sought approval to settle Ms. Peterson's claims against Carlton Hume in exchange for a $60,000 payment. ECF No. 410.

---

[6] The Court is aware that Ms. Peterson disputes this characterization based upon the language in the Woldeyohannes Judgment stating that Ms. Woldeyohannes was the sole owner of a limited liability company named A to Zee, LLC. Additionally, during the January 13, 2016 hearing, Ms. Peterson argued that this Court (Dabrowski, J.) made a finding that Ms. Woldeyohannes owned a 100% interest in A to Zee, LLC. However, as noted by the Court during the hearing, the Court (Dabrowski, J.) entered a Judgment on counts one and two of adversary complaint filed in case number 12-2021 seeking revocation of Ms. Woldeyohannes's discharge, which is different than a finding of fact as Ms. Peterson argued. *See* adversary proceeding case 12-2021, ECF Nos. 1, 35.

### e. 2018 Orders Regarding Ms. Peterson's Discharge and the Chapter 13 Standing Trustee's Final Report

On March 8, 2018, the sixty (60) month term of Ms. Peterson's Plan expired. Thereafter, on June 6, 2018, the Court issued an Order denying Ms. Peterson's motion seeking an extension of time to obtain a Chapter 13 discharge (the "Order Denying Extension of Time"). ECF No. 641. The Court noted that during a hearing held on May 16, 2018, the Chapter 13 Standing Trustee and Ms. Peterson agreed that all funds to complete the terms of the Plan had not been received by the Chapter 13 Standing Trustee, but they disagreed as to whether Ms. Peterson was required to make additional payments or whether the missing payments were to be paid by others to the Chapter 13 Standing Trustee. ECF No. 641. The Court ordered the Chapter 13 Standing Trustee to file a final report and accounting for this Chapter 13 case. ECF No. 644.

On July 31, 2018, the Chapter 13 Standing Trustee filed her Final Report stating that Ms. Peterson's Chapter 13 estate had not been fully administered. ECF No. 656. Thereafter, the Court entered the Closure Order:

> ORDER: The Chapter 13 Trustee having filed a final report indicating that the estate has not been fully administered because all plan payments were not made, and the debtor Alyssa Peterson having indicated in several court hearings that she does not intend to make the final plan payments or does not agree on the amount due, if any, and the maximum five year period to make Chapter 13 plan payments have [sic] elapsed, it is hereby
> ORDERED: That, the Clerk shall close this Chapter 13 case without discharge. ECF No. 658.

The same day, on August 3, 2018, the Chapter 13 case of Ms. Peterson was closed without discharge.

### f. Ms. Peterson's Motion for Reconsideration and Show Cause Motions.

Ms. Peterson's Motion for Reconsideration claims the Final Report fails to account for $25,000 – in the form of a check payable to A to Zee, LLC -- that Ms. Peterson argues

9

she made available to the prior Chapter 13 Standing Trustee by noting in her Settlement Motion that counsel for Carlton Hume proposed to pay $25,000 to A to Zee, LLC in settlement of state court litigation. ECF No. 660, p.4, ¶¶ 1, 2, 11, 12, 13. Ms. Peterson asserts that both the current Chapter 13 Standing Trustee and the Former Trustee failed to take appropriate actions to receive or acknowledge this $25,000 and, due to their failure, Ms. Peterson should be granted a Chapter 13 discharge. ECF No. 660, p. 4-5.

In the Show Cause Motions, Ms. Peterson seeks an order directing the Chapter 13 Standing Trustee, her staff, and the Office of the United States Trustee to show cause why the Final Report does not account for the $25,000 and why the Former Trustee failed to take action to receive or acknowledge the $25,000. Ms. Peterson argues that she brought the $25,000 to Former Trustee, that the Former Trustee and the Chapter 13 Standing Trustee improperly abandoned them by failing to give her a credit for those funds. ECF No. 664, p. 9.[7] The following excerpts from Ms. Peterson's Show Cause Motions illustrate her argument that the Chapter 13 Standing Trustee or the Former Trustee failed to act:

> The Final Report at ECF No. 656 is false because it does not account for how the Trustee office awarded itself $8,605.04 [the statutory Chapter 13 Trustee fee] for concealing assets or failing to report assets it should have collected, or at the very minimum following proper procedure to abandoned scheduled assets.
> ECF No. 664, p. 5.

> Bottom line, there was no legal means for former Chapter 13 Trustee Whiton to ignore the interests of all creditors or a plan she deemed 100% "Treat Solvent" at ECF 245; no means to go back on her duties of collecting settlements and funds she cited thereafter at Plan Confirmation hearing in ECF 437; and no means to ignore a Court (Dabrowski, J.) Order at ECF 215 that was served on her to ensure she collected or retrieved scheduled Plan assets.
> ECF No. 664, p. 9.

---

[7] "The Debtor and her counsel both notified and brought $25,000.00 of scheduled Plan assets to the Trustee. It was absolutely the Trustee's duty to acknowledge them, receive them, or abandon them with notice to Debtor and creditors." ECF No. 664, P. 9.

10

> The Debtor and her counsel both notified and brought $25,000.00 of scheduled Plan assets to the Trustee. It was absolutely the Trustee's duty to acknowledge them, receive them, or abandon them with notice to Debtor and creditors.
> ECF No. 664, p. 9.

To be clear, Ms. Peterson does not allege that anyone tendered a physical check or payment of $25,000 to the Former Trustee or the current Chapter 13 Standing Trustee.

## II.     STANDARD FOR RECONSIDERATION

Fed.R.Bankr.P. 9023 makes Fed.R.Civ.P. 59 applicable to bankruptcy proceedings while Fed.R.Bankr.P. 9024 makes Fed.R.Civ.P. 60 applicable to bankruptcy proceedings.

While Fed.R.Civ.P. 59 does not provide specific grounds for amending or reconsidering a judgment, it is well settled that the grounds for granting a motion for reconsideration in the Second Circuit are: "[(1)] an intervening change of controlling law; [(2)] the availability of new evidence; or [(3)] the need to correct a clear error or prevent manifest injustice." *Kolel Beth Yechiel Mechil of Tartikov, Inc. v. YLL Irrevocable Tr.*, 729 F.3d 99, 104 (2d Cir. 2013)(*citing Virgin Atl. Airways, Ltd. v. Nat'l Mediation Bd.*, 956 F.2d 1245, 1255 (2d Cir. 1992)). "Rule 59 is not a vehicle for relitigating old issues, presenting the case under new theories, securing a rehearing on the merits, or otherwise taking a 'second bite at the apple'...." *Analytical Surveys, Inc. v. Tonga Partners, L.P.*, 684 F.3d 36, 52 (2d Cir. 2012), *as amended* (July 13, 2012)(*citing Sequa Corp. v. GBJ Corp.*, 156 F.3d 136, 144 (2d Cir. 1998)).  "The standard for granting [a Rule 59 motion for reconsideration] is strict, and reconsideration will generally be denied unless the moving party can point to controlling decisions or data that the court overlooked." *Shrader v. CSX Transp., Inc.*, 70 F.3d 255, 257 (2d Cir. 1995).

11

"A motion for relief from judgment is generally not favored and is properly granted only upon a showing of exceptional circumstances." *McInnis v. Town of Weston*, 458 F. Supp. 2d 7, 11 (D. Conn. 2006)(*citing United States v. Int'l Broth. of Teamsters*, 247 F.3d 370, 391 (2d Cir. 2001)(discussing Rule 60(b))). Under Rule 60, "[t]he burden of proof is on the party seeking relief." *Int'l Broth. of Teamsters*, 247 F.3d at 391. "Whether to grant a motion for relief under Rule 60(b) is within the discretion of the court." *Stevens v. Miller*, 676 F.3d 62, 67 (2d Cir. 2012)(*citing Montco, Inv. v. Barr (In re Emergency Beacon Corp.)*, 666 F.2d 754, 760 (2d Cir. 1981)).

### III.    DISCUSSION

After consideration of Ms. Peterson's arguments the Court finds them unpersuasive. Ms. Peterson failed to meet her burden to provide or identify evidence of an error in the Chapter 13 Standing Trustee's Final Report. Rather, Ms. Peterson attempts to re-define what it means to "receive" funds or to "bring" funds into the estate. Through her various motions Ms. Peterson asks the Court to conclude that the $25,000 was "received" by the Chapter 13 Standing Trustee or "brought into the Estate" when Ms. Peterson advised that $25,000 in settlement proceeds were going to be paid to A to Zee, LLC in her Settlement Motion. The record of this case, as previously noted, does not support such a conclusion. The Court did not grant the portion of Ms. Peterson's Settlement Motion requesting the Court exercise its jurisdiction over the $25,000 A to Zee, LLC settlement proceeds. *See* ECF No. 410. The Court notes that – as Ms. Peterson admits in ¶ 11 of the Motion for Reconsideration – the $25,000 was in the form of a check payable to A to Zee, LLC, not a check payable to Ms. Peterson or to her Bankruptcy Estate. ECF No. 660, ¶11. This $25,000, besides simply being mentioned as existing,

was simply not brought into Ms. Peterson's Chapter 13 estate in a manner that paid the money to the Chapter 13 Standing Trustee as a payment under Ms. Peterson's Plan.

Ms. Peterson also argues that the Order granting her relief from stay to pursue the assets of Ms. Woldeyohannes and Ms. Woldeyohannes's interest in A to Zee, LLC acted as an order pursuant to 11 U.S.C. § 542, compelling any assets of Ms. Woldeyohannes or A to Zee, LLC to be turned over for the benefit of Ms. Peterson's Chapter 13 case. ECF No. 660, ¶13. This mischaracterizes Judge Dabrowski's Order and, in any case, the underlying motion did not seek relief under § 542. While the Order permitted Ms. Peterson to exercise whatever non-bankruptcy rights or remedies she might have against Ms. Woldeyohannes and/or her interest in A to Zee, LLC, it did not direct turnover pursuant to 11 U.S.C. § 542. It also did not direct the Chapter 13 Trustee to collect assets. The Court acknowledges that Ms. Peterson takes the position that any assets of A to Zee, LLC, including any bank accounts or settlement proceeds such as the $25,000 insurance proceeds, should automatically be determined to be assets of Ms. Woldeyohannes and, by virtue of the Woldeyohannes Judgment, automatically turned over to Ms. Peterson. The Court does not adopt Ms. Peterson's position. To the extent Ms. Peterson believed that she was entitled to receive the $25,000 paid to A to Zee, LLC, she could have exercised her non-bankruptcy, state law remedies, including obtaining a bank levy on the personal property of A to Zee, LLC, such as accounts, checks, cash or cash equivalents. The Court notes that Ms. Woldeyohannes did not receive a Chapter 7 bankruptcy discharge of any debt -- including the debt owed to Ms. Peterson -- and nothing prevents Ms. Peterson from taking further action in a non-bankruptcy forum to pursue collection against A to Zee, LLC.

Through the Motion for Reconsideration and the Show Cause Motions, Ms. Peterson also argues that the Chapter 13 Standing Trustee and the Former Trustee had a duty to obtain or take some undefined sort of action regarding the $25,000 A to Zee, LLC settlement proceeds and that their failure entitles Ms. Peterson to a Chapter 13 discharge. Ms. Peterson previously argued in adversary proceeding case number 17-02081 that the Chapter 13 Standing Trustee and the Former Trustee had a duty to assist in the collection of the Woldeyohannes Judgment. *See* AP-ECF No. 6 in case number 17-02081. The Court previously considered and rejected Ms. Peterson's arguments on this point finding the argument -- that the Chapter 13 Standing Trustee or the Former Trustee had a duty to collect or retrieve Plan assets -- to be without merit. *See* 17-02081, ECF No. 31 (the "Dismissal Decision"). Ms. Peterson's arguments in this regard are another attempt to present arguments considered and rejected in the Dismissal Decision. The Court adopts and incorporates the reasoning set forth in the Dismissal Decision and concludes, for the same reasons, that neither the Chapter 13 Standing Trustee nor the Former Trustee had any duty to obtain or collect the $25,000 A to Zee, LLC settlement proceeds. The Court also rejects Ms. Peterson's arguments that the Chapter 13 Trustee or the Former Trustee improperly abandoned estate assets.

Ms. Peterson's arguments appear to stem from a misinterpretation of her obligations under her Plan. As noted above, the Plan proposed to be funded through nominal payments by Ms. Peterson of $200 a month and by Ms. Peterson's recovery of or collection of judgments in various lawsuits. From these sources, Ms. Peterson proposed to pay her general unsecured creditors a 100% dividend. Based upon Ms. Peterson's arguments, she believes that she could either make the called-for $200 a month payments or contribute funds from judgments not listed in her Plan, and her

14

obligations under the Plan would be satisfied. *See* ECF No. 664, p.1. In a similar vein, Ms. Peterson also believes that she did not bear any risk or obligation to perform if she was unable to obtain or collect the estimated amounts from the lawsuits noted in the Plan. The Court disagrees. The responsibility for funding a Chapter 13 plan lies with the debtor. 11 U.S.C. § 1322. "The Court [observes] that nothing in the Bankruptcy Code obligates anyone other than the debtor to fulfill the requirements of a confirmed plan." *In re Ladieu*, 548 B.R. 49, 61 (Bankr.D.Vt. 2016)(*citing In re Malewicz*, 457 B.R. 1, 7 (Bankr.E.D.N.Y. 2010).[8] The responsibility of a debtor in Chapter 13 was neatly described by David Carlson in his article entitled *Modified Plans of Reorganization and the Basic Chapter 13 Bargain*, as follows:

> In chapter 13, the debtor is offered a bargain. If a plan is confirmed, property of the estate is vested (i.e., sold) back to the debtor. In exchange, the debtor must pay postpetition disposable income in sufficient quantity to guarantee every unsecured creditor at least what she would have received in chapter 7. … It is a mistake, however, to conclude that the debtor is "obligated" by the plan. The debtor has no *in personam* obligation to meet plan terms. Rather, the plan describes the price the debtor must pay in order to achieve chapter 13's somewhat expanded discharge. How much income must be paid to win this prize? We learn from § 1322(a), which sets forth the "necessary" terms of a chapter 13 plan, that the plan must "provide for the submission of all or such portion of future earnings or other future income of the debtor to the supervision and control of the trustee as is necessary for the execution of the plan."
> David Gray Carlson, *Modified Plans of Reorganization and the Basic Chapter 13 Bargain*, 83 Am. Bankr. L.J. 585, 588–89 (2009).

While Ms. Peterson proposed to fund her Plan, in part, from proceeds of litigation claims which had yet to be received, nothing in her Plan relieved her of the commitment to pay her general unsecured creditors a 100% dividend. "The provisions of a confirmed plan bind the debtor and each creditor." 11 U.S.C. § 1327(a). If Ms. Peterson was unable

---

[8] "This is apparent from the straightforward statutory language governing plan confirmation: 'the court shall confirm a plan if ... the debtor will be able to make all payments under the plan and to comply with the plan.'" *In re Ladieu*, 548 B.R. 49, 61 (Bankr.D.Vt. 2016)(*quoting* 11 U.S.C. § 1325(a)(6)).

to realize the amounts from the various lawsuits set forth in her Plan, the burden was on Ms. Peterson to take action to 1) either fund the missing amounts needed to pay her general unsecured creditors 100% as bargained in exchange for a discharge; or 2) seek to modify the terms of the confirmed plan to account for the lower amounts received from the lawsuits;[9] or 3) seek a hardship discharge pursuant to the provisions of § 1328(b); or 4) seek to dismiss or convert her case.  Ms. Peterson cannot obtain a discharge and ignore the provisions of the confirmed Plan requiring payment of a 100% dividend to her general unsecured creditors.

In light of the conclusion that there was no failure on the part of the Chapter 13 Standing Trustee or the Former Trustee, there is no other basis to grant Ms. Peterson's Motions or to conclude that Ms. Peterson completed her obligations under the Plan.  The circumstances that existed at the time of the entry of the Closure Order continue to exist presently because: (1) the Plan was not fully funded; (2) no application for hardship discharge has been filed; and, (3) the case has not been fully administered in accordance with the confirmed Plan.

Ms. Peterson asserts that the case of *In re Klass*, 858 F.3d 820 (3d Cir. 2017) provides authority for allowing the sixty (60) month term of her plan to be extended to resolve matters in her case.  However, the *Klass* case is factually distinguishable.  In *Klass*, the Chapter 13 Trustee filed a motion to dismiss the case sixty-one months after the entry of the plan confirmation order, notifying the debtors of a shortfall in the amount needed to fully fund the Chapter 13 plan.  *In re Klaas*, 858 F.3d at 824.  Within sixteen (16) days after the Chapter 13 Trustee's motion, the debtors cured the deficit.  *In re Klaas*,

---

[9]    Ms. Peterson acknowledges that at the time of confirmation of her Plan, the circumstance of not receiving all the money was anticipated and the future possibility of needing to modify the plan was raised before the Court.  *See* ECF No. 664, p. 2, ¶3.

16

858 F.3d at 824.  The Court of Appeals for the Third Circuit concluded that the Bankruptcy Court did not abuse its discretion in denying the motion to dismiss and granting the debtors a discharge as nothing in the Bankruptcy Code mandated dismissal or prevented the Court from allowing a brief grace period for a late curative payment.  *In re Klaas*, 858 F.3d at 833.  Here, however, Ms. Peterson is not proposing that she can or will make a curative payment to fund the amount needed to fully fund the Plan.  Rather, she is seeking more time to argue that the Chapter 13 Standing Trustee or the Former Trustee was responsible for turning the information that there was a $25,000 check payable to A to Zee, LLC into funds that could be paid to creditors under the Plan.  Nothing presented by Ms. Peterson supports granting any of her various Motions.

**ACCORDINGLY**, it is hereby

**ORDERED**: That the Motion for Reconsideration, ECF No. 660, to the extent not previously granted, is DENIED; and it is further

**ORDERED**:  That the Show Cause Motions, ECF Nos. 662 and 664, are DENIED.

Dated on January 28, 2019, at New Haven, Connecticut.



Ann M. Nevins
United States Bankruptcy Judge
District of Connecticut

17